BRIDGET ZELOZOSKEI, appellant,

v.

ELIZABETH MASON, respondent.

[Filed January 27th, 1903.]

A testatrix, having three daughters, left the bulk of her estate to two of them, bequeathing to the other only $1. The daughter thus discriminated against filed a caveat against probate, and contended that the will was the product of the undue influence of one of her sisters, who resided with the mother. It appeared that testatrix had imbibed a strong prejudice against the caveator, by reason of an inference drawn by her in respect to caveator's conduct, which inference was probably unjustified, but was not unnatural, under the circumstances known to testatrix.—*Held*, that a case of undue influence, by false statements or suggestions on the part of the daughter who lived with testatrix, was not made out by mere proof that she acquiesced in her mother's view, without proof that she knew, or at least, had reason to believe, that her mother's prejudice was unwarranted by the facts.

On appeal from the Essex county orphans court.

*Mr. William J. Kearns,* for the appellant.

*Messrs. Guild, Lum & Tamblyn,* for the respondent.

MAGIE, ORDINARY.

This is an appeal from a decree of the orphans court of Essex county admitting to probate a written instrument as the last will and testament of Bridget Trainor, deceased.

The appellant is a daughter of Bridget Trainor, and the will discriminates against her, and gives her only a nominal share of the estate of testatrix.

At the time of the execution of the will there were three children of Bridget Trainor living, all of whom were daughters. The caveator was one, another was Mrs. Keyes, living in Buffalo; another was the respondent, Elizabeth Mason, a widow, who had

Zelozoskei *v.* Mason.

lived with her mother from a time about three months before the execution of the will, and who continued to live with her until her death, which occurred nearly three years afterward. The bulk of testatrix's estate was, by the will, given to Mrs. Mason and Mrs. Keyes. The bequest to the caveator was of $1.

The evidence before the orphans court, appearing in the transcript, clearly shows that the instrument in question was executed with all the formalities necessary to make it a valid testamentary disposition of property.

The evidence also discloses that, at the time of the execution of the will, the testatrix, although aged and somewhat infirm, possessed testamentary capacity, and there was no question in the court below, and there has been no question here, but that she was capable of making a will, or that she had executed properly the will in question.

The contention below, and here, has been that the will was not the act of decedent, but was induced by the undue influence of Elizabeth Mason, the daughter, who lived with her mother, the decedent.

The fact that Elizabeth Mason was, and had been for some little time, an inmate of her mother's house, living with her in the close intimacy that such conditions produce, no doubt discloses that she had the opportunity to exert some influence upon her mother. But the burden of establishing, by proof, the existence of that influence which is called undue is primarily upon the person who asserts its existence. Proof that opportunity existed to exert influence will not suffice. Nor will such proof, standing alone, raise such a presumption as to shift the burden, and require explanation or denial from the accused person. When proof of the opportunity to exert influence is supplemented by proof of the existence of relations of a confidential character, justifying the inference that the testator relied upon the advice and assistance of the other person in business matters, or by proof that such person exerted an actual control of the testator, as by excluding from communication with him others who would naturally be subjects of testamentary bounty, or by like conduct, the burden of proof is shifted, and explanation or denial is required. The probate judge who heard and saw the

Zelozoskei *v.* Mason.

witnesses has found that there was no proof, in this case, imposing any burden of explanation or denial upon Mrs. Mason, and in that conclusion I entirely concur. I am unable to find any evidence justifying a contrary conclusion.

If I had reached a different conclusion, I should be obliged, also, to conclude that Mrs. Mason had sustained such burden. She testifies unequivocally that she never made any suggestions or exerted any influence upon her mother in respect to the execution of a will or its provisions. There is no evidence that her mother relied upon her advice, or was accustomed to yield to her influence. On the contrary, in the sole instance in which it was sought to show the exertion of influence over her mother by Mrs. Mason, it clearly appears that the attempt was ineffective. Caveator and a witness called by her testify to having overheard Mrs. Mason suggest to her mother that caveator should be evicted from apartments which she occupied in her mother's house as a tenant. Mrs. Mason denied having made any such suggestion, but if the charge is credited, it appears, by the same evidence, that her mother declined to act as suggested, and permitted caveator to remain as tenant of the apartments.

The contention that Mrs. Mason exerted undue influence upon her mother is mainly put upon the ground that her conduct was fraudulent, in that she permitted and encouraged an untruthful inference to operate upon her mother's mind, to the disadvantage of the caveator. The circumstances upon which this claim is made are these: Shortly before the will was executed another daughter of decedent had died very suddenly from apoplexy. For certain reasons the authorities of the church to which the parties belonged refused to permit the body of the deceased daughter to be buried in the cemetery of that church, and the family were compelled to bury it in another cemetery, which they deemed not consecrated. The evidence discloses that this occurrence occasioned very great sorrow to the testatrix, and also that she attributed the fact that the ecclesiastical authorities had excluded the body of her dead daughter from what she conceived to be proper burial to some act, or omission to act, on the part of the caveator. The evidence tends to show that the exclusion from burial in the Catholic cemetery was not brought about

by any act of the caveator, but wholly because of the application of the rules of the church to the case in hand. But it also appears that the rules of the church, in that respect, were sometimes relaxed or dispensed with, or at least the parties believed so. Caveator admits that, in behalf of the family, she put herself in communication with the church authorities, and sought to obtain permission for the burial of her sister in their cemetery. As her negotiation failed, it was not wholly unnatural in the deeply-grieved mother to attribute the failure to caveator, as not having made all possible efforts in that regard. The caveator admits that, although she knew of her mother's grief at the fact of the exclusion, and that her mother held her responsible for it, she never laid before her mother the real facts, or sought to disabuse her mind, or show her that her notions with respect to caveator's conduct were not justified.

Whether or not the feeling of the testatrix against the caveator operated in producing the will in question and reducing the bequest to caveator to a nominal sum, is open to serious doubt. There is very persuasive evidence that testatrix had executed a previous will, made before the death and burial of the daughter, and therefore before there was any reason for the mother having prejudice against caveator on account of any act or omission connected therewith, in which there was a like provision with respect to caveator. Assuming, however, that there may be justifiable inference from the evidence that testatrix deceived herself with respect to the conduct of the caveator, and that such self-deception produced the nominal bequest to caveator, that fact will not render invalid the testamentary disposition made by testatrix. She had a right to act upon her own inferences, and to give or withhold her bounty according as matters appeared to her, even though an apparent injustice is thereby done.

But the claim is that Mrs. Mason encouraged her mother in her delusion respecting the conduct of the caveator, and that thereby she exerted over her mother an influence that was undue. Undoubtedly a knowingly false representation of facts to one who proposes to make a testamentary disposition of property, intending to influence, and actually influencing, his testamentary act, made by one who seeks and obtains an advantage therefrom,

may be admitted to be an exertion of an influence that is undue, the will of the deceased being deemed to be dominated, not by excessive persuasion or threats or force, but by fraud. *Stewart* v. *Jordan, 5 Dick. Ch. Rep. 733.* The proofs respecting any communication between Mrs. Mason and her mother on the subject of the mother's anger at the caveator is extremely contradictory. But there is evidence which, if credited, seems to indicate that Mrs. Mason appeared to acquiesce in her mother's view of the responsibility of the caveator for the occurrence which the mother deemed so grievous. But a case of undue influence is not thus made out. There is no evidence whatever that Mrs. Mason knew the real facts, or had any reason to believe that the real facts would have exonerated her sister (the caveator) from the charge her mother persisted in making. There is, therefore, no room for inference that Mrs. Mason presented to her mother, by her acquiescence in her mother's view, a statement which was known to her to be false in fact.

This result renders it unnecessary to consider the question whether, if there was evidence that Mrs. Mason was aware that her mother's animosity was founded upon error, and that the real fact was that caveator had not been delinquent as her mother deemed, she exerted an influence that was undue, by the mere fact that she did not disclose it to her mother. If her mother had questioned her with respect to the facts, and especially if she had connected such questioning with her preparations to make a will, perhaps duty would have required her to disclose the real facts, and her suppression of them might be considered fraudulent, and if it influenced the mother, the influence might be considered undue. But there is no evidence whatever that the testatrix sought from Mrs. Mason any statement respecting the facts, or any advice or aid respecting the testamentary disposition of her property.

The attack upon this will as being the product of undue influence has no support, in my judgment, in the evidence.

The decree admitting the will to probate was therefore proper to be made, and must be affirmed.